## TOM BOSTICK *v.* THE STATE.

EVIDENCE — PRACTICE.— The Code of Procedure, article 661, directs that testimony shall be allowed at any time before the argument is concluded, if it appear "necessary to the due administration of justice." Within the purview of this provision testimony to discredit a material witness of the adverse party, by proving his conflicting statements, may well become "necessary to a due administration of justice," even though it be cumulative; and the fact that it was not offered in its regular order is not a sufficient reason for its exclusion.

Statement of the case.

APPEAL from the District Court of Colorado. Tried below before the Hon. EVERETT LEWIS.

The indictment charged that the appellant, on November 23, 1879, did willfully, feloniously and maliciously set fire to a certain store-house and dwelling, the property of William Munch. This is the second appeal from convictions which concurred in assessing a term of ten years in the penitentiary as the punishment. In volume 10 of these Reports, at page 705, the report of the case on the former appeal will be found. The trial which resulted in the present appeal was had at the Fall term, 1881, of the District Court of Colorado county.

W. Munch, for the State, testified that between three and four o'clock in the morning of November 23, 1879, his store-house, warehouse and dwelling, which adjoined each other in the town of Alleyton, Colorado county, were destroyed by fire. Witness and his wife had barely time to escape, without their clothing. Some time before the fire the witness had made a complaint against appellant for stealing candy, and subsequently the appellant met him in the road and struck him with a stick, and threw a brick-bat at him. Witness was up until about one o'clock the night of the fire. Some men, white and colored, were playing cards in the warehouse, which stood between the store and the dwelling. They were not playing by candle-light, but had a railway lantern. When witness went to bed no lights were burning. There was no moss nor any rags in the wareroom at that time.

Cayene Foster, a freedwoman, testified for the State. She stated that she saw the fire when Munch's houses were burned. The light of the fire shone in at her window, and when she awoke and discovered the fire, which was north of her, it had burned a good deal. She looked over there and saw the appellant. She lay in her bed and hallooed "fire," and kept up that cry. Appellant

then walked off up the street in a north direction. Witness thought the fire started at the south end and on the outside of Munch's buildings. It illuminated her room so that you could have picked up a pin there.

On her cross-examination the witness stated that the appellant had on a hat and dark pants, and was standing and looking at the fire. Being asked if she had not stated at the former trial that she recognized the appellant by the light of the moon, she first replied that she did not know whether she had or not, but afterwards denied that she had so stated. Her present statement was that she saw him by the light of the fire. She did not go to the place of the fire until it was over. When the case was formerly tried Mr. Munch gave her five dollars, to pay her expenses while at court and on her way back to her home in an adjoining county. There was a fence between the fire and the house occupied by her when she saw it, but she could see the appellant plainly through the fence, and was positive in her identification of him.

Two or three witnesses for the State testified to threats made by the appellant, within a short time before the fire, that he would kill Munch and that he would burn him up.

The defense introduced Riney Beverly, who testified that she was at Munch's house about eleven o'clock the night of the fire. She went there to find her husband, and saw a crowd gambling in the warehouse, which was lighted up with candles. Rags and moss were in the room. She heard the State's witness Foster testify at the former trial, and on that occasion state that she, Foster, saw the fire when it was just starting, and saw Tom Bostick by the light of the moon.

Mrs. Smith, for the defense, testified that she lived in Alleyton at the time of the fire on Munch's premises, and was then a widow and living alone. Appellant's mother

lived just in the rear of witness's garden. Witness was awake most of the night with a sick child. People were riding by and making noises which frightened her, and she heard the cry of "Fire." She took her little girl and went to the house of appellant's mother, and found there the mother of appellant and some children. This was about three o'clock, or between three and four, and she stayed there till day. Some one was lying on the floor, covered up. She asked appellant's mother who that was, and she replied that it was Tom Bostick, the appellant. He did not get up while witness remained there.

Julia Bonds, for the defense, testified that she was the mother of the appellant, who was about eighteen years old at the time Munch's premises were burned. Witness lived in Alleyton at that time, and when she heard of the fire she called her two sons, Jim and the appellant, who were sleeping on the floor. Jim got up just as Mrs. Smith came in; Tom, the appellant, did not get up. He had been out hunting that night with E. Goodings, who had since been killed by the railroad cars. On cross-examination the witness stated that Tom came home about half past one that night.

W. S. Delaney, Esq., testified that he heard the deceased witness Goodings testify at the former trial, to the effect that, on the night of the fire, he and the appellant went out coon-hunting, caught some game, and came back to Alleyton about one o'clock, when they separated and each went to his home.

The defense proved that the Alleyton blocks were two hundred and fifty feet square; that Munch's tenements were on the northeast corner of a block, and the house of the State's witness Foster on the corner of an adjacent block and opposite the southwest corner of the block on which Munch's buildings were situate; and that Foster's house was surrounded with a high fence constructed of planks set on their ends.

The opinion discloses the special matters involved in the rulings.

*W. S. Delaney* and *George McCormick*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

White, P. J.   This is a second appeal from a judgment of conviction in this case, the punishment being assessed each time at imprisonment in the penitentiary for a period of ten years.   See *Bostick* v. *State*, 10 Texas Ct. App. 705.   As in the former appeal so in this, the statement of facts shows that the evidence of the State's witness Foster "was the strongest, most pertinent and pointed evidence adduced against the defendant upon the trial."   In the only bill of exceptions appearing in the record we find, "that the witnesses were, on motion of the district attorney, placed under the rule, and after the State had introduced her witnesses in chief the defendant introduced his and rested; and the State then introduced witnesses in rebuttal, when, before the argument of the case had commenced, the defendant offered to introduce Mr. Kennon, Esq., an attorney engaged in the prosecution of the case, and who had represented the State on the former trial hereof, had at the spring term, 1881, of this court, and offered to prove by said witness Kennon that the State's witness Cayene Foster testified on the trial of this cause when last on trial that she recognized the defendant Bostick by the light of the moon,— that it was a bright moonlight night, and the fire was just beginning fairly to burn," etc.   On her cross-examination when on the stand, the witness Foster had been asked by defendant's counsel if she had not stated at the last term of the court that she recognized Tom Bostick by the moonlight, and she had answered that she had not so stated. The court refused to permit defendant to make the proof proposed as above by the witness Kennon, and in expla-

nation of the reasons for his ruling says,— "The testimony offered was of the same character and effect as that testified to by Riney Beverly, a witness for defendant, before the State offered rebutting testimony, and the testimony was cumulative and not in order or deemed necessary to the ends of justice." Riney Beverly had testified that she had "heard the witness Foster testify at the last term of this court in this case; she then said she saw the fire when it was just starting and saw Tom Bostick by the light of the moon."

The question is, was the evidence admissible, and were the reasons of the court for refusing it correct and satisfactory? Foster being the main witness for the prosecution in identifying and connecting defendant with the time and at the place of the burning, it was of vital importance to defendant, could he do so, to weaken or break down her testimony by showing that she had made conflicting statements with regard to the matter. This mode of impeaching a witness is a common practice, and it is oftentimes a most effective method of destroying the evidence of an adverse or hostile witness. It is elementary in fact that "a witness called by the opposing party can be discredited by proving that on a former occasion he made a statement inconsistent with his statement on trial, provided such statement be material to the issue." Whart. Crim. Evid. § 482. And we are not aware of any rule which inhibits cumulative evidence as to the disputed fact. On the contrary, in many instances the more evidence the impeaching party could adduce, the greater likelihood of his establishing the proposed contradiction. Nor was it a sufficient reason for refusing the introduction of the evidence that Riney Beverly, the defendant's witness, had testified to the same fact. One impeaching witness may confuse the mind as to what to believe, whereas two, three or four others concurring may confirm the matter and give belief a sure foundation to

reject the evidence of the disqualified witness from the case. *Wofford* v. *State*, 44 Texas, 439; *Butler* v. *State*, 3 Texas Ct. App. 48.

If the evidence was legitimate, and if it was important to the defendant, then the fact that it was not introduced in its regular order was no sufficient reason for its rejection under our statute, which requires that "the court shall allow testimony at any time before the argument is concluded, if it appear that it is necessary to a due administration of justice." Code Crim. Proc. art. 661.

We are of opinion that the court erred in excluding the evidence, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*